IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

JOYCE TODD,

    Plaintiff,

v.                                 Civil Action No. CV-01-J-0676-J

TOWN OF OAKMAN; KENNETH
WIGGINS, and GARY FARRIOR,

    Defendants.



## MEMORANDUM OPINION

Currently pending before the court is the defendants' motion for summary judgment (doc. 11), memorandum of law with supporting evidentiary materials, and reply brief. The plaintiff submitted a motion in opposition (doc. 13), a memorandum of law, and supporting evidentiary materials (doc. 14). The court has reviewed the motion, the memoranda of law, and the evidentiary submissions of the parties. Upon consideration of the pleadings, briefs, and evidentiary submissions, the court concludes that the defendants' motion for summary judgment is due to be **GRANTED IN PART** and **DENIED IN PART**.

### I. Procedural History

Plaintiff commenced this action on March 16, 2001, by filing a complaint (doc. 1). Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging defendants violated her rights as guaranteed by the First, Fourth, Ninth, and Fourteenth Amendments to the United States Constitution. Plaintiff also brought state law claims of assault and battery; invasion of privacy; false imprisonment; intentional infliction of emotional distress; negligence,

carelessness, and unskillful conduct; and negligent hiring, training, retention, and supervision.[1]

## II. Factual Background

In 1999, the plaintiff was a member of the Town Council in the Town of Oakman, Alabama. Todd decl. at ¶ 1. On October 20, 1999, plaintiff went to the police department to complain that a resident of the town, Bob Moore ("Moore"), referred to plaintiff as a troublemaker, which upset plaintiff "because it wasn't true." Todd depo. at 48. Plaintiff hoped that the Acting Chief of Police, defendant Gary Farrior ("Farrior"), would convince Moore to stop telling people in town "that if anything happened to him, that Gary [Farrior] was going to put me in jail."[2] Todd depo. at 48, 49.

When plaintiff arrived at the police department she told Farrior that she "was tired of [Moore] going all over town saying that Gary was going to put me in jail if anything happened to him." Todd depo. at 63. Plaintiff asked Farrior to speak with Moore, but thought that Farrior appeared disinterested in her complaint. Todd depo. at 63-64. Plaintiff stated to Farrior "well, if you don't want to handle it, I'll just handle it myself." Todd depo. at 63-64. Plaintiff then left the police station and returned to her car.

---

[1] Plaintiff's brief in opposition states "Todd does not object to the Court granting Wiggins' individual capacity claims for qualified immunity and discretionary function immunity. Likewise, Todd does not object to the Court granting Wiggins and the Town of Oakman summary judgment on the plaintiff's 1983 claims based on failure to train and failure to discipline." Pla. brief at 16. The court shall so order.

[2] According to plaintiff, Bob Moore is "a disabled veteran, and he's - - he's not got it all together. He's loud and obnoxious." Todd depo. at 44.

As plaintiff approached her car, Farrior "yelled at me to come back in the police department." Todd depo. at 65. Plaintiff told Farrior that she was going home, to which he yelled at her again to come back into the police department. *Id.* Farrior caught up to plaintiff and blocked her driver's side door, preventing her entrance into her car. *Id.* He again told her to get back in the police department. *Id.* Plaintiff walked to her passenger side door and entered her car. *Id.* Farrior then "jerked my passenger door open, reached in, and grabbed my hand and twisted my keys out of my hand, and he said, 'you're under arrest.'" *Id.* at 65-66. When plaintiff questioned Farrior as to the cause of her arrest, he replied "disorderly conduct" and that if she did not return to the station he would charge her with "resisting." Todd depo. at 66.

Plaintiff, terrified, returned to the police department. Todd depo. at 66. Farrior began to fill out an incident report and then, according to plaintiff, said "well, I'm not going to do anything about this . . . ." *Id.* at 67. Instead, Farrior gave her a tour of the police department and "all the stuff that they had in the evidence room and the office. And took me out to his car and showed me all the stuff he had in the trunk of his car." *Id.* at 67-68. Farrior kept plaintiff at the department for an hour and a half. *Id.* at 88.

Plaintiff returned to the police station a day or so later and asked Farrior for a form to lodge a complaint about the incident. Todd depo. at 69-70. In response, plaintiff states Farrior told her he had a year to prosecute her for the earlier incident. *Id.* at 69-70, 97-98. Nevertheless, plaintiff took the form, filled it out, and gave it to a lawyer. *Id.* at 70-71. She does not know what became of the form after she gave it to the lawyer. *Id.* at 71. Todd

3

wrote a letter detailing the incident and sent it to Mayor Kenneth Wiggins on October 22, 1999. *Id.* at 68. Plaintiff succeeded in raising the incident and her request that Farrior be disciplined at the Town Council meetings of November 16 and December 13, 1999. *Id.* at 72; Complaint at ¶¶ 40-45.

Farrior disputes plaintiff's version of the events. According to Farrior, plaintiff demanded that he arrest Moore. Farrior depo. at 75-76. Farrior told her Moore had filed an incident report earlier that day alleging plaintiff had harassed him. *Id.* at 79. Plaintiff became irate, pushed some papers on Farrior's desk, and then stormed out of the station declaring that she would take care of the situation herself. *Id.* at 79-80. Even under this version of events, Farrior admits none of these actions constitute a crime. *Id.* at 80.

Once outside, Farrior asked plaintiff if she would "please stop and wait a minute and let me even explain what's on the incident offense report?" Farrior depo. at 81. She responded that she would "deal with it" herself and entered her car through the passenger side door.[3] *Id.* at 81-82. Farrior states he stuck his head in plaintiff's passenger door to ask her to calm down. He grabbed plaintiff's wrist, but states he did so to prevent her from striking him. *Id.* at 83-84. Plaintiff got out of her vehicle and returned to the police station with Farrior where they discussed the incident report filed by Moore. *Id.* at 91-92, 94. Farrior denies that he ever arrested plaintiff and states that he lacked probable cause to do so. Farrior depo. at 150-51. Farrior has no recollection of plaintiff and her friend returning to

---

[3]Farrior could state no reason the plaintiff would not have used the driver's side door. Farrior depo. at 82-83.

the police department to request a citizen's complaint form. Farrior depo. at 156. Farrior could not recall telling plaintiff that he had one year to prosecute her. Farrior depo. at 139-40. However, Farrior acknowledged that he later apologized to plaintiff. Farrior depo. at 129-30.

### III. Standard of Review for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23, 106 S.Ct. at 2552. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The burden then shifts to the non-moving party to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file'

designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed. R. Civ. Pro. 56(e)). In meeting this burden the non-moving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. Pro. 56(c); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

On motions for summary judgment, the court shall construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50, 106 S.Ct. at 2511. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury

6

or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52, 106 S.Ct. at 2512.

## IV. Analysis

Because this case comes before the court on the defendants' motion for summary judgment, the court has considered all of the evidence in the light most favorable to the plaintiff.

### A. Count I: First Amendment

Count I of plaintiff's complaint states a claim for a violation of plaintiff's First Amendment rights against defendant Farrior and presumably defendant Town of Oakman.[4] Plaintiff asserts that, when she requested a citizen complaint form, Farrior responded by stating he had a year to prosecute her. Todd depo. at 97-98. Plaintiff alleges that this remark was meant to chill her First Amendment rights to make a complaint. Defendant contends that plaintiff's First Amendment rights were not violated as her speech was not actually chilled.

"In order to sustain a Section 1983 action based upon the chilling effect on one's freedom of speech, the plaintiff must actually suffer the chilling effects of the improper conduct." *Bennett v. Village of Oak Park*, 748 F.Supp. 1329, 1335 (N.D.Ill.1990) (citing *Laird v. Tatum*, 408 U.S. 1, 14 n. 7, 92 S.Ct. 2318, 2325-26 n.7, 33 L.Ed.2d 154 (1972)). Plaintiff argues that she suffered the chilling effects of Farrior's conduct because she "refrained from turning the citizen's complaint form back into the Oakman Police

---

[4] Neither the plaintiff's complaint nor the plaintiff's memorandum clearly state which claims are made against which defendants.

Department or otherwise utilizing the department's complaint process as a result of Farrior's threat. Additionally, based on Farrior's threat ... Todd refrained from pursuing any further action against Farrior ...." Plaintiff's memorandum at 15. Plaintiff's actions, however, contradict the statements in her brief.

Plaintiff testified that she filled out the citizen's complaint form, gave it to a lawyer, and does not know what happened to it afterwards. Todd depo. at 69-71. In her deposition, plaintiff stated that on October 22, 1999, she sent Mayor Wiggins a letter detailing the incident. Todd depo. at 68. Plaintiff brought up the incident at town council meetings held on November 16, and December 13, 1999. Plaintiff's actions clearly indicate that she did not "refrain from pursuing further action against Farrior." Because Farrior's threats did not prevent plaintiff from repeatedly complaining about Farrior, or from completing a citizen complaint form, the court finds that the plaintiff's speech was not chilled. *See e.g. Pittman v. Cole*, 267 F.3d 1269, 1284 (11th Cir. 2001) (finding plaintiff's showed First Amendment rights which were actually chilled). Here, the plaintiff could point to no action she would have taken, but did not, because of Farrior's comment. Thus, the court concludes that there was no First Amendment violation as a matter of law and that defendants' motion for summary judgment as to the First Amendment claim is due to be **GRANTED**.

### B. Count II: Unlawful Seizure and Excessive Force

Plaintiff also asserts a claim under 42 U.S.C. § 1983 for unlawful seizure and excessive force against defendants Farrior and the Town of Oakman. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides "a method for vindicating federal

rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2695 n. 3, 61 L.Ed.2d 433 (1979)). To succeed, a § 1983 plaintiff must show a violation of a right secured by federal law. The plaintiff claims her rights under the Fourth Amendment, to be free from unlawful seizure, were violated. *Skinner v. City of Miami, Fla.*, 62 F.3d 344, 347 (11th Cir.1995).

A seizure occurs when a police officer, "by means of physical force or a show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16, 88 S.Ct. 1868, 1879 n.16, 20 L.Ed.2d 889 (1968) ("It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person"). A person has been arrested when, "in view of all the circumstances surrounding the incident, a reasonable person would have believed [she] was not free to leave." *United States v. Hammock*, 860 F.2d 390, 393 (11th Cir. 1988) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980)).

As discussed above, plaintiff alleges that Farrior physically blocked her entrance into her car, opened her passenger side door, grabbed her by the wrist, told her she was under arrest, and then commanded her to return to the police department. The court, therefore, concludes that, in the light most favorable to the plaintiff, an arrest occurred. Further, Farrior acknowledged that he lacked probable cause to arrest plaintiff and denied that an arrest took place. Farrior depo. at 150-51. Defendants argue that even if the arrest occurred, Farrior is entitled to qualified immunity. "Qualified immunity shields [police officers] against a claim

9

of an arrest without probable cause if a 'reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed.'" *Williamson v. Mills,* 65 F.3d 155, 158 (11th Cir.1995) (quoting *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991)). A police officer is protected by qualified immunity if he had "arguable" probable cause to make an arrest. *See Williamson,* 65 F.3d at 158.

At the time of the events in question, case law had "clearly established that an arrest made without probable cause violates the Fourth Amendment." *See Redd v. City of Enterprise, Ala.,* 140 F.3d 1378, 1382 (11th Cir. 1998).[5] As such, Farrior is not entitled to assert qualified immunity in defense of this claim. Examining the evidence in the light most favorable to the plaintiff, Farrior lacked both actual and arguable probable cause to arrest plaintiff for disorderly conduct as defined by Alabama Code § 13A-11-7 (1975). Because a genuine issue exists whether an arrest occurred and because Farrior admits he lacked

---

[5]*See also Williamson,* 65 F.3d at 157, stating, "We conclude that Mills does not merit qualified immunity against the Fourth Amendment false arrest claim. An official sued as an individual is entitled to qualified immunity ... if his conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). 'For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel ... the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances.' *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1150 (11th Cir.1994) (en banc) .... Even under these stringent standards, Mills is not entitled to qualified immunity from Williamson's claim of false arrest because a reasonable official in Mills's shoes, possessing the information Mills possessed, could not have believed that his conduct comported with the Fourth Amendment."

probable cause to make an arrest, the court finds genuine issues of material fact remain for a jury on the issue of whether the plaintiff's Fourth Amendment rights were violated.[6]

### C. Count III: State Law Claims

<u>1. False Imprisonment & Assault and Battery</u>

Because a genuine issue exists whether the plaintiff was arrested, the court also finds genuine issues of material fact necessarily remain as to plaintiff's claims of false imprisonment and assault and battery against Farrior. Therefore, defendant Farrior's motion for summary judgment on these claims is due to be **DENIED**.

<u>2. Invasion of Privacy</u>

Plaintiff states a claim for the invasion of privacy against defendant Farrior. As defined, one's privacy is invaded when one suffers a "wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *McIsaac v. WZEW-FM Corp.*, 495 So.2d 649, 651 (Ala.1986). Examining the evidence in the light most favorable to the plaintiff, she has not met this burden. Therefore, defendants' motion for summary judgment as to the claim for invasion of privacy is due to be **GRANTED**.[7]

---

[6] Because a genuine issue exists whether an arrest occurred and because defendant Farrior admits lack of probable cause for an arrest, the court must also submit the plaintiff's excessive force claim to a jury under the law of the this Circuit. *See Williamson v. Mills*, 65 F.3d at 158-59; *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir.2001)("a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim").

[7] The plaintiff failed to address this claim at all in her memorandum of law in response to the defendants' motion for summary judgment. As such, the court also considers this claim as

3. Intention Infliction of Emotional Distress

Plaintiff's claim for the intentional infliction of emotional distress requires plaintiff to show: "(1) that the defendant's conduct was intentional or reckless; (2) that it was extreme and outrageous; and (3) that it caused emotional distress so severe that no reasonable person could be expected to endure it." *Ex Parte Crawford & Co.*, 693 So.2d 458, 460 (Ala.1997). Plaintiff failed to present evidence of emotional distress so severe that no reasonable person could be expected to endure it. Although plaintiff alleges she was upset for a week, this is not "emotional distress so severe that no reasonable person could be expected to endure it." *Ex Parte Crawford & Co.*, 693 So.2d at 458. *See also U.S.A. Oil, Inc. v. Smith*, 415 So.2d 1098, 1100-01 (Ala.Civ.App.1982) (evidence showing that plaintiff was upset, had difficulty sleeping, and cried often was not sufficient to support a claim for outrage). Therefore, the court concludes that defendants' motion for summary judgment as to intentional infliction of emotional distress is due to be **GRANTED** as to defendant Farrior.[8] The plaintiff having conceded this claims is due to be dismissed against the Town of Oakman, the court shall also **GRANT** the motion for summary judgment on this claim as to this defendant.

4. Negligent Hiring, Supervision, Training, and Retention Claim

---

having been abandoned.

[8]The plaintiff failed to address this claim at all in her memorandum of law in response to the defendants' motion for summary judgment. As such, the court also considers this claim as having been abandoned.

12

For liability to attach to an employer for negligent hiring, supervision, retention, and training the employer must have either known or should have known in the exercise of due diligence of the employee's alleged incompetence. *See, e.g.*, *Perkins v. Dean*, 570 So.2d 1217, 1219-20 (Ala.1990) (addressing negligent supervision); *Portera v. Winn Dixie of Montgomery, Inc.*, 996 F.Supp. 1418, 1438 (M.D.Ala.1998) (addressing negligent supervision, training, and hiring). The record in this case is devoid of any incident that should have alerted the Town of Oakman to Farrior's alleged incompetency. Therefore, defendants' motion for summary judgment as to the claim of negligent hiring, supervision, training, and retention is due to be **GRANTED**.

5. Negligence, Carelessness, and Unskillful Conduct

Plaintiff's final claim is one for negligence, careless, and unskillful conduct. This claim is based in Alabama Code § 11-47-190, which attaches liability to a municipality for the acts of its employees if they were negligent, careless, or unskillful while acting in the line of duty. "In *Boyette v. City of Mobile*, 442 So.2d 61 (Ala.1983), this court held that notwithstanding Ala.Code 1975, § 11-47-190, which imposes municipal liability for injuries suffered through 'neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his duty,' a municipality has immunity from actions alleging unlawful arrest and imprisonment based on negligence on the part of city employees acting within the scope of their employment.

*Franklin v. City of Huntsville*, 670 So.2d 848, 850 (Ala.1995). Therefore, the defendants' motion for summary judgment on this claim is due to be **GRANTED**.

## V. Conclusion

The court having considered the foregoing, the court shall, by separate Order, dismiss with prejudice all claims against defendant Wiggins. Plaintiff's claims for First Amendment violations, intentional infliction of emotional distress, and failure to train, supervise and discipline against defendant Oakman will be dismissed with prejudice. Plaintiff's claims for First Amendment violations, invasion of privacy, intentional infliction of emotional distress, and negligence, carelessness and unskillful conduct against defendant Farrior will be dismissed with prejudice. The court notes the following claims remain: Court II, for violations of the plaintiff's Fourth Amendment rights against unlawful seizure and her excessive force claim against defendants Farrior and Town of Oakman; and Count III claims of false imprisonment and assault and battery against defendant Farrior.

**DONE** this _11_ day of April, 2002.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE